Argued February 2, reversed February 16, 1955

# STATE OF OREGON *v.* GOESSER
### 280 P. 2d 354

*Leo Levenson,* Portland, argued the cause and filed a brief for appellant.

*O. D. Howlett,* Deputy District Attorney, argued the cause for respondent. On the brief were John B. McCourt, District Attorney, James J. Kennedy and Louis Jayne, Deputy District Attorneys, all of Portland.

TOOZE, J.

The defendant, Leona Goesser, was convicted in the circuit court for Multnomah county, Oregon, of the crime of "Receiving the earnings of a common prostitute", and was sentenced to imprisonment in the Oregon State Penitentiary for a maximum term of two years. She appeals.

The indictment against defendant is based upon the alleged violation of § 23-922, OCLA (ORS 167.120), and, omitting formal parts, reads as follows:

"Rusty Goesser is accused by the Grand Jury of the County of Multnomah and State of Oregon, by this indictment of the crime of RECEIVING THE EARNINGS OF A COMMON PROSTITUTE committed as follows:

"The said RUSTY GOESSER on the 14th day of February, A.D. 1953, in the County of Multnomah and State of Oregon, then and there being, and one Lila Victor being then and there a common prostitute, *she,* the said Rusty Goesser, did then and there unlawfully and feloniously take and receive from said common prostitute, to-wit: the said Lila Victor, the earnings of the said Lila Victor as such common prostitute, by then and there taking and receiving from the said Lila Victor certain money, a more particular description of which said money is to this grand jury unknown, all of which said money, as the said Rusty Goesser then and there well knew, had then and there been earned by the said Lila Victor in the practice of common prostitution, * * *." (Italics ours.)

When arraigned upon the indictment, defendant gave her true name as "Leona Goesser".

Section 23-922, OCLA (ORS 167.120) provides:

"Any *man who* lives in or about a house of ill-fame, or habitually associates with or lives off of a common prostitute, or *receives from a common prostitute any part or all of her earnings,* or solicits or attempts to solicit any male person to have sexual intercourse with a prostitute, shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years. In all prosecutions under this section common fame is competent evidence in support of the indictment." (Italics ours.)

The language of the foregoing statute is perfectly plain, unambiguous, and understandable, and must be construed according to the terms employed. Resort to rules of statutory construction is not permitted for the purpose of reading into the law an intent or meaning different from that which its plain words imply. The court cannot concern itself with the wisdom of the legislation, nor with the public policy thereby established by the legislature. Those are matters exclusively for legislative determination.

By its plain terms, this criminal statute is directed solely to the reprehensible conduct of a male panderer. It deals exclusively with a certain type of male human parasite *that* lives off the earnings of a harlot. It is obvious that a female person who may, as the real principal, receive from a common prostitute any part or all of her earnings, or who commits any other of the acts condemned by the statute, is not amenable to the prohibitions of this particular law. There are other "Indecent Acts" statutes which condemn the wrongful conduct of females, as well as of males, but this one does not. For example, "any person" (which includes

both men and women) is subject to indictment and prosecution for the crime of "keeping a bawdyhouse" (ORS 167.105), "procuring female to engage in prostitution" (ORS 167.125), "transporting female for prostitution purposes" (ORS 167.130), and "procuring or transporting female under 18 for prostitution purposes" (ORS 167.135).

■ Aside from time and place (to satisfy the statute of limitations and venue requirements), the essential elements of the crime under the statute are: (1) the existence of a common prostitute; (2) receiving any part or all of the earnings of such prostitute by (3) a man. All those elements must be present, and must concur and combine, before a crime under the statute has been committed.

Article I, § 11, Oregon Constitution, provides:

"In all criminal prosecutions, the accused shall have the right * * * to demand the nature and cause of the accusation against him, and to have a copy thereof; * * *."

The constitution also provides that no person shall be charged with crime in a circuit court except upon indictment of a grand jury (except in cases of waiver by accused and consent to be tried on an information filed by the district attorney). Article VII, § 18, Oregon Constitution.

ORS 132.520 provides:

"The indictment, which is the first pleading on the part of the state, shall contain:
"(1) The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties.
"(2) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person

of common understanding to know what is intended.''

ORS 132.540, in part, provides:

''(1) The indictment is sufficient if it can be understood therefrom that:
'' * * * * *

'' (f) *The act or omission charged* as the crime *is clearly and distinctly set forth in ordinary and concise language,* without repetition, in such a manner as to enable a person of common understanding to know what is intended and with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case.
'' * * * * *.'' (Italics ours.)

■ On its face, the indictment in this case fails to state a cause of action against the defendant, in that no man is named or described as the recipient of the earnings of the common prostitute who is named. The indictment itself shows that defendant is a woman, ''a person'' who is not included within the prohibition of the particular statute involved.

But the state contends that although a woman cannot be a principal in the commission of the particular crime charged, nevertheless, she may be an accessory to the crime by aiding and abetting a man in the commission thereof, and that, if an accessory, she was properly indicted and tried as a principal.

ORS 161.220 provides:

''The distinction in felonies between an accessory before the fact and a principal, and between principals in the first and second degree, is abrogated. All persons concerned in the commission of a felony or misdemeanor, whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals

*and shall be indicted, tried, and punished as principals."* (Italics ours.)

The state maintains, and the evidence disclosed, that one Tod Wilson, a male person, was the individual who actually received the earnings of the prostitute named in the indictment. He was the principal and, of course, was subject to indictment and prosecution for his illegal acts under the statute. But, as before observed, he is not named in the indictment in this case, nor is any other "man" named.

For the purposes of this opinion, we assume that there was sufficient evidence to establish the fact that defendant aided and abetted Tod Wilson in his commission of the crime of "receiving the earnings of a common prostitute", and that as an accessory the defendant could and should be charged as a principal. It also may be conceded, as the state contends, that inasmuch as defendant could not be the actual principal in the commission of the crime charged, the indictment charging her as such could produce in her mind but one reasonable conclusion, and that is that she was simply an accessory, and was being prosecuted as a principal on account thereof pursuant to the provisions of ORS 161.220. But the indictment did not advise her as to what particular crime she was an accessory. Several persons may have been receiving the earnings of the named prostitute, including the defendant. Whom did she aid and abet? If a man, what man? Did she aid and abet a person who could commit the crime? Unless the principal was a man, no crime was committed. The indictment is wholly silent as to those matters.

■ As we have noted, the presence of "the man in the case" is one of the essential ingredients of the crime charged. It is manifest, therefore, that to state a crime under this particular statute, it is necessary that the

indictment show on its face that some man was involved as the real principal.

In *State v. Smith,* 182 Or 497, 502, 188 P2d 998, we said:

"In an indictment for an offense created by statute, it is usually sufficient to describe the offense in the words of the statute. State v. Packard, 4 Or. 157, 160; State v. Branton, 49 Or. 86, 88, 87 P. 535; State v. Bailey, 115 Or. 428, 433, 236 P. 1053; State v. Burke, 126 Or. 651, 676, 269 P. 869, 270 P. 756. Sometimes, however, a statement of the particular circumstances of the crime is necessary in order to charge the defendant with having committed specific acts bringing him within the condemnation of the statute, and in those cases the indictment must be direct and certain as to such circumstances. * * *"

In *State v. Underwood,* 79 Or 338, 341, 155 P 194, a prosecution under the statute now being discussed, this court considered the well-established rules respecting the certainty of allegations in an indictment, and the necessity of pleading the circumstances necessary to constitute a complete crime, and said (In brackets we substitute words apropos to the instant indictment):

"Applying these rules to the indictment before us, the name or identity of the alleged prostitute [man], is not given, nor are there any surrounding facts or circumstances narrated whereby her [his] identity might be established. It must be conceded that the state would be under obligation to prove to the jury that there was a woman [man] in the case, and also that she was a prostitute [and also that he received the earnings of a named common prostitute]. * * * When the indictment does not in any manner disclose her [his] identity, how can the defendant be prepared to rebut the evidence of her [his or her] unlawful occupation [acts]? It is urged

that this doctrine must render the work of the prosecution extremely difficult, and, at times, prevent convictions; but the established principles of procedure cannot be disregarded by the courts in order to facilitate convictions.''

See also: *State v. Burke et al.,* 126 Or 651, 676, 269 P 869, 270 P 756; *State v. Packard,* 4 Or 157, 160; *State v. Gifford,* 19 Wash 464, 53 P 709.

In *State v. Branton,* 33 Or 533, 56 P 267, we stated that the decision of the Washington Supreme Court in *State v. Gifford,* supra, ''has been virtually reversed by the more recent case of *State v. Webb,* 55 Pac 935''. *State v. Gifford* has not been reversed by the Washington court, but in some cases it has been discussed and distinguished: *State v. Cooper,* 26 Wash2d 405, 174 P2d 545, 549; *State v. Dickey,* 181 Wash 249, 42 P2d 790, 791; *State v. Morgan,* 21 Wash 361, 58 P 215, 216 (decided on the authority of *State v. Gifford,* supra).

We are here dealing with a particular and unusual statute, a statute that concerns itself exclusively with certain unlawful conduct on the part of a man. That fact sets it apart from other criminal statutes where the crimes defined may be committed by ''any person'', either by man or woman, or by both a man and a woman acting together. The Supreme Court of Washington, in discussing *State v. Gifford,* supra, pointed out this distinction in *State v. Nichols et al.,* 148 Wash 412, 269 P 337, 338.

The state has invited our attention to a number of decisions by this court where an accessory has been charged as a principal, and where the indictment charged the crime in the words of the particular criminal statute involved. But none of the cases so cited refer to the alleged crime charged in the indictment in the instant case.

In *State v. Rosser,* 162 Or 293, 86 P2d 441, 87 P2d 783, 91 P2d 295, the charge was arson, which may be committed by "any person". In *State v. Weitzel,* 157 Or 334, 69 P2d 958, defendants were jointly indicted for the crime of sodomy, and also for the crime of rape. In *State v. Olsen,* 138 Or 666, 7 P2d 792, defendants were jointly indicted on the charge of assault to commit rape. In *State v. Fraser,* 105 Or 589, 209 P 467, defendant was indicted on the charge of violating a provision of the Blue Sky Law relating to the sale of securities. Under the particular provision of the law involved, the crime could be committed only by a corporation. However, the indictment contained a full statement of the circumstances of the crime, charging that defendant was president of the corporation, naming it, that the corporation was offering for sale securities, and that defendant acted for and on behalf of the corporation in doing what it is alleged he did in violation of the law. The indictment in that case clearly disclosed the name and identity of the real principal, viz., the corporation. That is not true in the instant case. In *State v. Steeves,* 29 Or 85, 43 P 947, the defendants were jointly indicted for the crime of murder.

In support of its position that in a case such as the one now before us it is sufficient to charge the crime against an accessory to charge it in the words of the statute, the state cites: *State v. Geddes,* 22 Mont 68, 55 P 919. That case is distinguishable from the case at bar, in that the Montana statute which provides that accessories to crimes shall be prosecuted as principals (similar in that respect to our own statute), further expressly states that "no other facts need be alleged in any indictment or information against such an accessory, than are required in an indictment or information against his principal." No such provision appears

in the Oregon statutes quoted above. Constitutionally speaking, some question might well be raised as to the validity of the quoted portion of the Montana statute, but that matter is not before us in this case.

The indictment in the instant case does not state a crime. Defendant did not demur to the indictment prior to trial, but after a jury was empaneled, and before any testimony was offered touching the merits of the case, defendant objected to the introduction of any further evidence on the ground that the indictment failed to state a cause of action against defendant. The objection was overruled. She also raised the same question on a motion for a new trial.

▮▮▮ The objection that an indictment fails to state facts sufficient to constitute a crime is never waived; it may be raised for the first time in this court. But in the absence of a demurrer to the indictment on that ground, and when the question is first raised here, the allegations of the indictment are liberally construed by this court in favor of the state. When a demurrer has been interposed, the pleading is construed most strictly against the state. These rules have become elementary in Oregon.

By assuming for the purposes of this opinion that it is possible for a woman to be an accessory to the particular crime defined in the statute under consideration, and hence amenable to prosecution as a principal on account thereof, we do not wish to be understood as so holding. A decision upon that question is unnecessary in this case.

However, by no rule of liberal construction could we read into this indictment one of the essential elements of the alleged crime, that is, the presence and identity of "the man in the case".

Reversed.